## In re Condemnation of Property on the South Side of the Parkway

*James McMullan*, for petitioner.

*Myron Jacoby*, contra.

KUN, J., January 6, 1936.—Awards were made for taking certain property by condemnation for public use. The question before the court is whether the Corn Exchange National Bank & Trust Company is entitled to intervene and have its name substituted for that of

Grace Wilson Harris as the person to whom the awards made in the matter are to be paid. The Corn Exchange National Bank & Trust Company was the holder of first mortgages on the properties involved, and the amount of the awards for taking the properties is less than the amount of the mortgages. The "mortgagee has the right to demand that the damages arising from such public work shall be applied on account of his mortgage": Sarapin v. Philadelphia et al., 306 Pa. 388, and Woods Run Avenue, 43 Pa. Superior Ct. 475, cited therein.

The owner of the properties engaged attorneys to represent her and agreed to pay them for their services 10 percent out of the "gross amount collected" from the city. The question has been raised whether or not the attorneys employed by the owner are to have their fee paid out of the amount of the awards, in this case less than the amount of the mortgages, before the amount of the awards is turned over to the mortgagee. The owner at the time of the taking of the property is undoubtedly the proper person to institute the proceedings: Philadelphia & Reading R. R. v. Pennsylvania Schuylkill Valley R. R., 151 Pa. 569, and Woods Run Avenue, supra; and as pointed out in the attorneys' brief, the court always recognizes the rights of lien creditors in the distribution of such a fund: The City of Philadelphia v. Dyer, 41 Pa. 463. This, however, does not answer the question before us. The question is, can the attorneys' fee in this case be regarded in any sense as a lien upon the amount of the award which, as we have stated, is insufficient to pay the amount of the mortgages?

As to the right generally of an attorney to a lien for his fees, the clear statement of Mr. Justice Strong in Dubois' Appeal, 38 Pa. 231, at page 234, states the law on the subject in Pennsylvania:

"In a certain sense, an attorney has been said to have a lien for his fees, upon the money or papers of his client, while they are in his hands. He may deduct from money collected by him, a just compensation for collecting it,

and need only pay over the balance. This, however, is a right to defalcate, rather than lien. So he may retain papers intrusted to him, until he has been paid for services rendered in regard to them. But possession is indispensable to his lien as much as it is to the lien of an ordinary factor or bailee. It has never been determined that he can maintain a claim upon a fund in court, against a mortgagee or a judgment-creditor, even though such mortgagee or creditor be his own client. In distributing money in court, the Common Pleas is guided by the liens of record. True, if there be a question respecting the ownership of a record lien, the court may decide it; but lien is not ownership. The attorney has no title to the judgment which he secures, or to the mortgage which he is instrumental in obtaining. Not being an owner, he cannot claim as a distributee. We concur, therefore, in opinion with the learned president of the Common Pleas, that the attorney, as such, was not entitled to share in the distribution made in this case."

The point is further elucidated in Patrick, etc., v. Smith, 2 Pa. Superior Ct. 113, at pages 121 and 122:

"The remaining question for consideration is whether the allowance to Macfarlane for services as attorney should be paid out of the fund to the prejudice of an attaching creditor. It is no doubt true that by reason of his services the judgment against Mrs. Smith was reversed and the right of Riddle to the fund thus terminated. But the services were rendered for Mrs. Smith and it is not claimed that Macfarlane acted in behalf of the trustee, or that he agreed to look solely to the attached fund for payment.

"It is true that in equity a chancellor has power to direct the payment of reasonable counsel fees out of moneys for distribution, when the fund is the product of the attorney's labors and he has agreed to look to it solely for his compensation: McKelvy's App., 108 Pa. 615. And similar authority is vested in the orphans' court: Price's App., 116 Pa. 410. But there is no war-

rant for the proposition that at law an attorney's claim for services, for a sum not judicially ascertained nor assented to by other claimants, is a lien upon the fund attached as against such claimants. To hold that an attorney's fee is a lien on the money in court because it was recovered through his services, would be to ignore the doctrine of Dubois' App., 38 Pa. 231, the principles of which were distinctly recognized in McKelvy's App., supra, although the cases differ materially in their facts.

"However desirable it may be to allow claims of counsel for services out of funds which those services secured, it cannot be done, in the absence of legislation permitting it, to the prejudice of other creditors who have liens upon the moneys."

Moreover, if the attorneys in the instant case could in any sense be said to have a lien, the lien of the mortgagee is obviously superior, and since the award is not sufficient to pay the entire lien of the mortgagee, the whole fund must go to the mortgagee. In no event can a lien be satisfied by taking the amount thereof out of a prior lien.

The attorneys for the owner have cited In re Second Street, 1 Del. Co. 413, as being directly in point and as supporting their contention that they are entitled to have their fee paid out of the fund. The statement at the beginning of the report of that case is that one of two tenants in common engaged an attorney, and that the other tenant objected to the allowance of any fee to the attorney who represented his co-owner. In its discussion the court says that the mortgagee objected to the allowance of the attorney's fee. It is stated in the briefs that the records of the case in Delaware County have been mislaid, and hence because of the conflicting statements referred to it is not certain whether it was the owner or the mortgagee who objected. The opinion of the court must be read, however, as stating that it was the mortgagee who objected. In overruling this objection the court proceeds on the theory that inasmuch as the mort-

gagee is entitled to such an award of damages as a matter of equity only, he must do equity and pay the owner's attorney's fee. We do not agree with either the reasoning or the conclusion reached in that case. The owner of a property subject to a mortgage is really the owner only of the equity in the property over and above the mortgage, and when he contracts with reference to the property he can do so only with reference to his equity in it. He cannot bind the interest of the mortgagee. The owner of the property in this case engaged the attorneys and agreed to pay them a certain percentage of the amount of the award. The owner could not legally agree to give away part of the award which would be payable to the mortgagee. The agreement of the owner in this case to pay the attorneys 10 percent of the amount "collected" has reference to so much of the award as would be payable to and collected by her. If there were a surplus in the award over and above the amount necessary to pay off the mortgages, the attorneys under their agreement would have an equitable lien for their fee as to that portion of the award, under the cases cited by the attorneys on that point. However, that principle cannot apply as to any sum which by law is payable to and therefore "collected" by someone else, to wit, the mortgagee. This was the view adopted by the New York Court of Appeals in Deering v. Schreyer et al., 171 N. Y. 451, 64 N. E. 179, which we think is sound and therefore follow. In that case, Deering, an attorney, had a contract with Schreyer, the owner of lands subject to a mortgage, to pay him, Deering, 50 percent of "whatever sum shall be allowed, recovered, or confirmed on account of said loss and damage" for land appropriated by the City of New York. The court said at page 180:

"As the appropriation by the city by force of the statute extinguished all preëxisting titles and liens, the owner of the mortgage was entitled to have the award applied thereon to the extent necessary for his protection. Gates v. De La Mare, 142 N. Y. 307, 37 N. E. 121.

The amount of the mortgage and taxes were thus carved by the law out of the award, and the balance only represented the loss and damage of Schreyer. That balance was all that he was entitled to retain for himself, and all in which he had any beneficial interest. It was to this extent only that he was benefited by the efforts of the plaintiff, as the latter knew must be the result when he made the contract. Schreyer could not receive for his own use any more than the value of the land taken after deducting the amount of the liens thereon. He could not have compelled the city to pay him the entire award, but only the net balance remaining after deducting the amount of the liens, for that represented his substantial interest in the land. The 'remaining interest,' as we may call it for convenience, belonged to others, and the plaintiff could not claim one-half of the amount going to them, but only one-half of the amount going to Schreyer, who did not own the mortgage, and was not injured because it was appropriated by the city, not benefited if others received payment for their own. Land incumbered by liens is worth to the owner only the amount representing its value after the amount of the liens has been deducted."

The court directed that the amount of the mortgage and taxes should be deducted from the award made to the owner and the fee of the attorney calculated upon the portion of the award payable to the owner.

The point is made that in Sarapin v. Philadelphia et al., supra, the court in awarding the funds to the first mortgagee permitted the deduction therefrom of costs, fees of experts, and a counsel fee. This does not appear in the report of the case as stated. No reference to the allowance of a counsel fee is made in the case whatever. Assuming however that it had been specifically allowed in that case, it would not be controlling here. The Sarapin case did not involve the taking of the whole land covered by the mortgage, and thereby divesting the mortgage. The damages were awarded for a change of grade. The mortgagee was apparently willing to take the

amount of the award less legal expenses, on account of its mortgage, which remained as a first lien on the property as security for the payment of the balance of the mortgage, so that the question of the right of the owner's attorney to have his fee paid out of the award (when insufficient to pay the mortgage) was not raised or litigated.

A mortgagee has the right as a matter of law to demand that the damages arising from the taking of the mortgaged property for public use or from its impairment in value by public work shall be applied on account of his mortgage. An owner has no right to do anything which will lessen in any degree the amount of the mortgagee's security. His attorney's fees cannot be deducted from any part of an award for the taking of the mortgaged property, which is payable in law to the mortgagee.

The rules, to amend the awards of the jury of view by substituting the Corn Exchange National Bank & Trust Company in the above proceeding as the one entitled to receive the awards, are made absolute.